UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JS CHINA SOURCING INC.

Plaintiff,

-against-

AMERICAN EAGLE OUTFITTERS, INC.,

Defendant.

Civil Action No. ____________

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff JS China Sourcing Inc. ("JSC") by its undersigned attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, for its Complaint against Defendant American Eagle Outfitters, Inc. ("AEO") allege as follows:

## PRELIMINARY STATEMENT

1. This case arises out of Defendant AEO's inexcusable infringement of Plaintiff's incontestable OVERSLEPT trademark on directly competitive products, sold to the same consumers, at the same price point, in similar channels of trade:



2. Plaintiff JSC is a New York City based wholesale apparel company that designs and sells stylish, trendy sleepwear to young women. JSC sells through large online retailers such as Target, Walmart, and Kohls marketplaces, and in more than 3,400 brick and mortar retail stores across the country, such as Charlotte Russe, Urban Planet, rue21, and Burlington stores.

3. Although the company itself is small in size, with only 10 employees working from its garment district offices in Manhattan, JSC has sold over 1.5 million units of OVERSLEPT branded sleepwear nationwide since 2019, totaling approximately $3.8 million in sales. Every year since its launch, JSC's OVERSLEPT brand has experienced considerable growth.

4. Until AEO's recent infringement, the OVERSLEPT brand was unique in the marketplace: JSC was the only company in the country using OVERSLEPT as a trademark for sleepwear, making it a highly distinctive trademark in this category of goods. JSC is also the only company that owns a U.S. trademark registration or application for the trademark OVERSLEPT in any class of goods.

5. In July 2026, AEO launched a line of women's sleepwear using the designation OVERSLEPT that is confusingly similar to JSC's OVERSLEPT mark. The parties are using the virtually identical marks, in similar fonts, on the same class of goods, sold to the same consumers, through similar channels of trade.

6. The fact that AEO sometimes uses words "by Aerie" in small font with OVERSLEPT does little to dispel confusion because consumers may assume an association or affiliation between the parties when none exists.

7. AEO's launch of OVERSLEPT to date has been large—and will be massive by the holiday season. AEO is in the process of flooding both the online and brick and mortar

marketplaces with infringing product and advertising. AEO currently sells over 120 OVERSLEPT branded products, has installed OVERSLEPT branding in all of its 335 retail stores, has created a section of its website dedicated to OVERSLEPT branded product, has purchased keyword advertising so that internet searches direct customers to its OVERSLEPT products online, and has heavily promoted its OVERSLEPT products on social media.

8. All of this has happened since July. There is no doubt that a deluge of marketing, advertising, and promotion is coming from AEO ahead of the holiday season. Without immediate injunctive relief, JSC's unique OVERSLEPT brand will soon drown in a sea of infringing AEO OVERSLEPT product and advertising.

9. Marketplace confusion has already occurred. On July 27, 2026, upon seeing AEO's OVERSLEPT in an Aerie retail store, one of JSC's wholesale buyers texted a photo to JSC's founder asking "Isn't this one of your labels?" This is how JSC learned of AEO's infringement.

10. If AEO is allowed to continue to sell its directly competitive sleepwear products under the infringing OVERSLEPT mark, additional consumer confusion is inevitable. Consumers and other marketplace participants (such as wholesale buyers) already familiar with JSC's brand may incorrectly believe that JSC has licensed or sold its mark to AEO. Consumers who encounter AEO's infringing OVERSLEPT product first and JSC's OVERSLEPT brand second may think that JSC's product *is* Aerie product, that it is affiliated with Aerie, or worse, that JSC's sleepwear is infringing *AEO's* OVERSLEPT trademark—when, in fact, the opposite is true. In all of these scenarios JSC is irreparably harmed because it has lost control of its brand.

11. AEO's infringement is inexcusable. It is not plausible that AEO, a sophisticated public company that itself owns dozens of trademarks and enforces its own trademark rights

aggressively, did not search the United States Patent and Trademark ("USPTO") register or run a simple Internet search for OVERSLEPT in advance of adopting the mark.

12. More likely, AEO did these things, knew about JSC's trademark, but took the calculated business risk that a small company like JSC would not have the resources to challenge AEO's use in court. Having rolled the dice, AEO should not be heard to complain if this Court enjoins its use of the OVERSLEPT mark.

## PARTIES

13. Plaintiff JSC is a New York corporation with its principal place of business in this District at 225 W. 37th St, Suite 904, New York, NY 10018.

14. Defendant AEO is a Delaware corporation with its principal place of business at 77 Hot Metal St, Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. JSC's claims are based, in part, on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051-1127. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

16. This Court has personal jurisdiction over Defendant AEO pursuant to N.Y. CPLR §§ 302(a) because Defendant AEO transacts business within the State of New York and has committed trademark infringement within the State of New York. Defendant sells infringing OVERSLEPT products in stores in New York and in this District and to consumers in New York through its publicly available website.

17. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to this action occurred in this District and because Defendant is subject to personal jurisdiction in this District.

**Plaintiff JSC And The Creation Of The OVERSLEPT Brand**

18. JSC is a New York based apparel wholesaler with 10 employees operating from offices in New York City's garment district. One of JSC's signature brands is OVERSLEPT, which was conceived of and developed by JSC's founder Stacy Medvin in 2019.

19. Ms. Medvin built her company JSC from scratch. She spent nearly 40 years working in the fashion industry, starting as an entry level employee, rising up through the ranks of the industry, to ultimately founding JSC in 2015.

20. JSC's primary focus is designing and selling stylish, trendy women's sleepwear for younger women. All of JSC's OVERSLEPT branded products are designed by Ms. Medvin and her small team of employees. In consultation with her business partner, Ms. Medvin oversees all aspects of JSC's business operations, including products sold under the OVERSLEPT trademark.

21. JSC conceived of and designed JSC's OVERSLEPT brand of sleepwear in 2019. JSC is the owner of U.S. Trademark Registration No. 6,380,939 for the mark OVERSLEPT. Having been registered on the principal register since June 8, 2021 and continuously used during since then, JSC's registration is incontestable. 15 U.S.C. § 1065.

22. Since the brand launched, JSC's OVERSLEPT products have enjoyed consistent commercial success. JSC has sold approximately 1.48 million units of OVERSLEPT products since 2019, totaling over $3.8 million in sales. Every year since its creation, sales of the OVERSLEPT brand have grown considerably.

**Defendant AEO's Wrongful Adoption of OVERSLEPT**

23. Until July 2026, JSC was the only company in the country selling sleepwear under the brand name OVERSLEPT.

24. On July 6, 2026, more than five years after JSC began using the OVERSLEPT mark, AEO launched a new brand of sleepwear, "OVERSLEPT by Aerie." AEO swiftly made its OVERSLEPT sleepwear available for purchase both online on its website, located at https://www.ae.com/us/en/c/aerie/, and in AEO's retail stores across the country, flooding the marketplace with its infringing products.

25. AEO simultaneously launched an advertising campaign to promote its new OVERSLEPT product line, making posts promoting the new OVERSLEPT brand on Instagram, Facebook, and Tik Tok. AEO likewise has engaged in numerous paid partnerships with influencers to advertise its OVERSLEPT sleepwear on social media, many of which feature the hashtag "#Overslept," causing search results for the term "overslept" on social media to be overwhelmed by AEO's products. AEO also added numerous large displays to its Aerie store locations that prominently feature the OVERSLEPT mark, which is visible both inside of the stores and on the street to passersby.

26. In both the online and in store environments, the OVERSLEPT portion of AEO's brand is presented prominently, in oversized font, while the "by Aerie" portion is deemphasized both in size and relative placement to rest of the mark.

27. AEO's infringing OVERSLEPT mark is nearly identical to JSC's OVERSLEPT mark. The dominant word in both marks—OVERSLEPT—is identical and is presented in a similar font:













**<u>JSC's OVERSLEPT Trademark</u>**













**<u>AEO's OVERSLEPT Trademark</u>**

28. The parties' marks are also identical in sound and meaning.

29. JSC and AEO are direct competitors. Both companies offer comfortable, casual sleepwear for women and teenage girls. Both OVERSLEPT brands sell many loose fitting sleepwear sets with matching pajama shirts and pants, often featuring a fun and whimsical print or pattern. In addition, JSC and AEO's OVERSLEPT products are sold at a similar price range (typically between $8 and $40).

30. JSC and AEO operate in overlapping channels of trade. Both parties' products are sold in stores located in the same shopping malls. Customers shopping in these malls—in particular those shopping for sleepwear—are likely to encounter both parties' OVERSLEPT branded products in a single shopping trip. In addition, both JSC's and AEO's OVERSLEPT branded products are available for purchase online, and Internet searches for "Overslept sleepwear" display both parties' products next to each other.

31. It's also likely that the parties' products will be sold in the same stores in the near future. At the end of retail seasons, big chain stores like Aerie often sell their surplus inventory to jobbers (*i.e.*, wholesalers), who then sell it to stores in the off-price retail market. Aerie has done so in the past, and if it were to do so now, AEO's OVERSLEPT branded product would be sold alongside JSC's OVERSLEPT products at stores like Burlington.

32. JSC first discovered AEO's infringing use of OVERSLEPT on July 27, 2026 by a text message to Ms. Medvin from a corporate buyer for Discovery Clothing Inc. ("Discovery"), a retail store which sells JSC's OVERSLEPT products. The text message contained a photo of one of AEO's infringing OVERSLEPT displays and said "Isn't this one of your labels?"

33. In addition, on August 13, 2026, a corporate buyer for Burlington Stores Inc. ("Burlington")—one of JSC's largest buyers for OVERSLEPT products—informed Ms. Medvin that she had seen AEO's OVERSLEPT branding on Aerie's website the previous evening and asked how AEO could be using JSC's OVERSLEPT brand.

**<u>AEO's Infringement Is Inexcusable</u>**

34. AEO is a sophisticated public company that owns dozens of registered trademarks. If AEO was not aware of JSC's incontestable trademark registration on the federal register before launching its infringing OVERSLEPT brand, its failure to do appropriate diligence is inexcusable. Federal registration serves as constructive notice to the public, and AEO should have reviewed the federal register for similar brands operating in the same space to avoid consumer confusion. Even conducting a simple Internet search would have revealed that another company was already in the marketplace selling sleepwear under the OVERSLEPT brand.

35. What seems more likely is that AEO ***was*** aware of JSC's OVERSLEPT trademark before launching, but took a deliberate, calculated business risk that JSC was too small a company to challenge AEO in Court. Certain facts support this inference. AEO selected a font for its OVERSLEPT brand that is virtually identical to the font used by JSC for its OVERSLEPT mark. Upon information and belief, AEO became aware of JSC's OVERSLEPT products during its year-long design process, liked it, and decided to adopt a similar brand. In addition, although AEO's past practice has been to file trademark applications for all of its brands, it did not do so for "OVERSLEPT by Aerie." Breaking with its usual protocol, AEO likely anticipated that the USPTO would deny registration for "OVERSLEPT by Aerie" on the grounds that it is confusingly similar to JSC's virtually identical, incontestable mark for exactly the same goods.

**<u>JSC Is Harmed By AEO's Infringing Use of OVERSLEPT</u>**

36. This case involves two types of consumer confusion: (1) forward confusion, which occurs when consumers already familiar with JSC's OVERSLEPT mark are confused when they encounter AEO's OVERSLEPT designation in the marketplace, and (2) reverse confusion, which occurs when consumers not yet familiar with JSC's OVERSLEPT mark encounter it after having been exposed to AEO's infringing OVERSLEPT brand and falsely believe that one brand is the other, that there is a relationship between the two brands, or that JSC is infringing AEO's trademark.

37. JSC is a small company built from the ground up by its founder, Ms. Medvin, who together with her business partner, oversees all aspects of its operation, including quality control over the products it sells under the OVERSLEPT brand. The goodwill and equity in JSC's OVERSLEPT mark is now inextricably linked to the actions and choices of AEO—a large public corporation over which JSC has no control or influence. This loss of control is irreparable.

38. At the wholesale level, JSC's relationships with buyers will be damaged if they mistakenly believe that JSC has infringed AEO's trademark. Harm to these critical business relationships that JSC has cultivated over many years would be devastating to its business.

39. In addition, buyers for retail stores may not purchase JSC's OVERSLEPT branded sleepwear if they are worried that consumers will not buy the produce because they mistakenly believe that JSC's OVERSLEPT products are infringing knock offs of AEO products, or believe that JCS's products are a diffusion line of AEO's products.

40. The harm to JSC as a result of AEO's infringing use of the OVERSLEPT mark is will only worsen as AEO ramps up the sale and advertising of infringing OVERSLEPT products in advance of the holiday season.

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114)**

41. JSC repeats and realleges each of the allegations above as if fully set forth herein.

42. JSC owns U.S. Trademark Registration No. 6,380,939 for the OVERSLEPT trademark, registered on the Principal Register on June 8, 2021 for use in connection with women's clothing in International Class 25.

43. JSC's OVERSLEPT registration is valid, subsisting, and, having been in use for five consecutive years subsequent to the date of registration, incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b), and constitutes conclusive evidence of the validity of the mark, of JSC's ownership of the mark, and of JSC's exclusive right to use the mark in commerce in connection with the goods specified in the registration.

44. Without JSC's consent, AEO has used in commerce a reproduction, copy, or colorable imitation of JSC's registered OVERSLEPT mark in connection with the sale, offering

for sale, distribution, and advertising of sleepwear and apparel, which use is likely to cause confusion, mistake, or deception as to the source, origin, or sponsorship of AEO's goods.

45. AEO's foregoing acts constitute infringement of a registered mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

46. AEO's conduct has damaged JSC and, unless enjoined by the Court, will further impair the value of JSC's OVERSLEPT mark, reputation, and goodwill. This harm constitutes an injury for which JSC has no adequate remedy at law and for which JSC is entitled to preliminary and permanent injunctive relief, and, after trial, recovery of damages proven to have been caused by reason of AEO's aforesaid acts.

47. Defendants' wrongful acts will continue unless and until they are enjoined, as authorized by 15 U.S.C. § 1116.

**SECOND CLAIM FOR RELIEF**
**(Federal Trademark Infringement, Unfair Competition and False Designation of Origin, False Association Under 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

48. JSC repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49. JSC has used the OVERSLEPT trademark since May 2019, long before AEO adopted and used the OVERSLEPT name.

50. JSC owns all right, title and interest in and to the OVERSLEPT trademark, including all common law trademark rights, which are uniquely associated with JSC as the source of goods and services offered by JSC.

51. The OVERSLEPT trademark is inherently distinctive and is therefore protectable.

52. Defendants' OVERSLEPT designation is confusingly similar to JSC's trademark due to its identical spelling, appearance, sound, and commercial impression.

53. AEO's unauthorized use of JSC's OVERSLEPT trademark is likely to cause confusion, mistake, or deception among consumers as to the affiliation or connection of Defendant's goods with JSC's OVERSLEPT mark and JSC. Consumers and marketplace participants likely will believe that AEO's OVERSLEPT is sponsored by, associated with, or otherwise affiliated with JSC and/or its OVERSLEPT brand.

54. AEO's use of the confusingly similar OVERSLEPT name is likely to cause irreparable injury to JSC's OVERSLEPT brand and the goodwill JSC has carefully cultivated. The extent of this harm cannot be ascertained at this time, leaving JSC no adequate remedy at law.

55. AEO's use of the OVERSLEPT name implies to consumers that its products come from the same source as JSC' products. Such implications are false, confusing to consumers, and material to consumers' purchasing decisions.

56. AEO's unauthorized use of the OVERSLEPT name in connection with promotion or sale of its products falsely suggests that these products are connected with, sponsored by, affiliated with, or related to, JSC.

57. AEO's unauthorized use of the OVERSLEPT name constitutes trademark infringement, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

58. AEO's conduct has damaged JSC and, unless enjoined by the Court, will further impair the value of JSC's OVERSLEPT mark, reputation, and goodwill. This harm constitutes an injury for which JSC has no adequate remedy at law and for which JSC is entitled to preliminary and permanent injunctive relief, and, after trial, recovery of damages proven to have been caused by reason of AEO's aforesaid acts.

59. Defendants' wrongful acts will continue unless and until they are enjoined, as authorized by 15 U.S.C. § 1116.

**THIRD CLAIM FOR RELIEF**
**(Trademark Infringement and Unfair Competition Under New York Common Law)**

60. JSC repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61. The aforementioned acts of Defendant constitute trademark infringement and unfair competition in violation of New York law.

62. Defendant's conduct has damaged JSC and will, unless enjoined by the Court, further impair the value of JSC's OVERSLEPT name, reputation, and goodwill. This harm constitutes an injury for which JSC has no adequate remedy at law and for which JSC is entitled to preliminary and permanent injunctive relief, and, after trial, recovery of damages proven to have been caused by reason of AEO's aforesaid acts.

63. Defendants' acts have unjustly enriched Defendants, and have allowed Defendants to enjoy ill-gotten profits from the sale of their infringing products.

**PRAYER FOR RELIEF**

WHEREFORE, JSC demands trial by jury, and respectfully prays:

1. That Defendant and all those in active concert or participation with it (including, but not limited to, its respective officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) be preliminarily and permanently enjoined from:

(a) manufacturing, distributing, shipping, offering for sale, or selling any goods or services under the OVERSLEPT or OVERSLEPT by Aerie trademark, trade name, or other name or designation, or any other marks, names or slogans that are confusingly similar to JSC's OVERSLEPT trademark;

(b) representing, by any means whatsoever, that any products or services manufactured, distributed, advertised, offered, or sold by Defendant are JSC's products or services or vice versa, and from otherwise acting in a way likely to cause confusion, mistake, or deception on the part of purchasers or consumers as to the origin or sponsorship of such goods or services.

2. That Defendant and all those in active concert or participation with it (including, but not limited to, their respective officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the OVERSLEPT name, including, but not limited to, recalling from any and all channels of trade any and all infringing products and associated materials.

3. That Defendant be enjoined from applying for trademarks consisting of the OVERSLEPT name with the United States Patent and Trademark Office.

4. That Defendant account to JSC for its profits and any damages sustained by JSC, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, and unfair competition in the United States and New York.

5. That, in accordance with such accounting, JSC be awarded judgment for Defendant's profits, Plaintiff's damages, and a trebling of such award, pursuant to 15 U.S.C. § 1117 and New York law.

6. That JSC be awarded punitive damages pursuant to New York law in view of Defendant's intentional and willful trademark infringement and other conduct.

7. That JSC have and recover its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and New York law.

8. That Defendant file with the Court and serve on counsel for JSC within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

9. That JSC have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38(b), JSC hereby demands a trial by jury as to all such issues triable by jury.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated: September 16, 2026
New York, New York

By: */s/ Marc Greenwald*

Marc Greenwald
Jessica A. Rose
Elizabeth Bishop
295 Fifth Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
Email: marcgreenwald@quinnemanuel.com
jessicarose@quinnemanuel.com
elizabethbishop@quinnemanuel.com

*Attorneys for Plaintiff JS China Sourcing Inc.*